IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BING HU** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **MERCK SHARP AND DOHME LLC** | : | **NO. 23-754** |

**MEMORANDUM**

**Savage, J.**                                                                                                                   **August 29, 2023**

Plaintiff Bing Hu initiated this action against his former employer, defendant Merck Sharp and Dohme, LLC ("Merck"), for various violations of the Americans with Disabilities Act ("ADA"), the Family and Medical Leave Act ("FMLA"), and the Age Discrimination in Employment Act ("ADEA").[1] Among other relief, Hu is seeking damages for earnings lost as a result of his termination from Merck on October 7, 2022.[2]

Following his termination, Hu began a new position with Alexion Pharmaceuticals, Inc. ("Alexion"), on October 31, 2022.[3] During the course of discovery, Merck served requests for information and documents pertaining to Hu's claim for lost wages and the extent to which he attempted to mitigate his damages by searching for new employment.[4] In response, Hu produced more than ninety-one documents detailing his wage loss and mitigation efforts, including his resume, the Alexion offer letter, his start date, his earnings since his termination from Merck (including pay stubs and W-2 documents), salary and benefits information, information regarding his recent relocation at Alexion, repayment

___

[1] Compl., ECF No. 1.

[2] *Id.* at 19 ("wherefore" clause ¶ B).

[3] Memo. of L. in Supp. of Pl.'s Mot. to Quash and/or for a Protective Order at 3, ECF No. 20 ["Pl.'s Br."].

[4] Pl.'s Resps. to Def.'s First Set of Interrogs., ECF No. 20-1 (attached as Ex. A to Pl.'s Mot. to Quash and/or for a Protective Order).

agreement, his current title/position, and communications with Alexion regarding these subjects.[5]

In August of 2023, Merck advised plaintiff's counsel of its intent to serve a subpoena on Alexion seeking eight categories of documents and all communications regarding Hu's application, interview, start date, job description, and relocation with Alexion (Request Nos. 1-5); Hu's compensation and negotiation with Alexion (Request Nos. 6-7); and any requests for medical accommodations or medical leave made by Hu to Alexion at any point (Request No. 8).[6] Hu moves for a protective order pursuant to Rule 26(c) or, alternatively, for an order quashing Merck's subpoena under Rule 45(d)(3) on the basis that it is overly broad, vague, irrelevant, not proportional to the needs of the case, harassing and an invasion of Hu's privacy interests.

Federal Rule of Civil Procedure 26 delineates the scope of discovery and provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Federal Rule of Civil Procedure 45 governs subpoenas that are directed to non-parties to the underlying lawsuit. Subpoenas issued under Rule 45 "must fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1)." *First Sealord Sur. v. Durkin & Devries Ins. Agency*, 918

---

[5] Pl.'s Br. at 11-14.

[6] Subpoena, ECF No. 20-4 (attached as Ex. D to Pl.'s Mot. to Quash and/or for a Protective Order).

F. Supp. 2d 362, 382 (E.D. Pa. 2013); *see also Rardon v. Falcon Safety Prod., Inc.*, No. 23-1594, 2023 WL 5347298, at *2 (3d Cir. Aug. 21, 2023). "As with all discovery, the subpoenaing party 'bears the initial burden of demonstrating the requested discovery is relevant,' as defined by Rule 26." *ITOCHU Int'l, Inc. v. Devon Robotics, LLC*, 303 F.R.D. 229, 232 (E.D. Pa. 2014) (quoting *First Sealord*, 918 F. Supp. 2d at 382). After the discovering party meets its burden of establishing relevance, the burden shifts to the party opposing the subpoena "to demonstrate that the subpoenas must be quashed under Rule 45(d)(3), or demonstrate that good cause exists for the issuance of a protective order under Rule 26." *Saller v. QVC, Inc.*, No. CV 15-2279, 2016 WL 8716270, at *6 (E.D. Pa. June 24, 2016); *see also Green v. Cosby*, 314 F.R.D. 164, 169 (E.D. Pa. 2016).

A party opposing a subpoena may move for an order under Rule 45, which provides that a District Court "must quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv); *see also In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 239 (E.D. Pa. 2014). In determining whether a subpoena subjects a person to undue burden under Rule 45, factors to consider include "relevance, the need for the information requested, whether the information can be obtained by other means, burdens the subpoena may impose, the status of the recipient as a non-party, and the costs of compliance." *Rardon*, 2023 WL 5347298, at *2.

Alternatively, a party seeking an order to protect discovery material under Rule 26(c) "must demonstrate that 'good cause' exists for the order of protection." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994); *see also* Fed. R. Civ. P. 26(c)(1) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."). Good cause to

issue a protective order is established where "disclosure will result in a 'clearly defined and serious injury to the party seeking the protective order.'" *Pepsi-Cola Metro. Bottling Co. v. Ins. Co. of N. Am.*, No. CIV 10-MC-222, 2011 WL 239655, at *2 (E.D. Pa. Jan. 25, 2011) (quoting *Pansy*, 23 F.3d at 786).

Hu argues that many of the documents demanded are duplicative and unnecessary, as Hu has already produced "nearly every single document that Defendant has requested" regarding Hu's damages and mitigation efforts.[7] Hu contends that Merck's remaining requests seeking "almost every conceivable document regarding his interactions and employment with Alexion" are not proportional to the needs of the case and constitute an impermissible fishing expedition for evidence.[8] Hu further argues that Merck should not be permitted to subpoena Alexion because doing so would be an invasion of his privacy and damage his current employment relationship.[9] Hu, in short, characterizes the subpoena as harassing.

Merck maintains that each of its requests are relevant and sufficiently narrowly tailored to the issues in this case. Specifically, Merck argues that further communications made between Hu and Alexion bear on Hu's lost earnings damages and efforts to mitigate them by revealing the type of position Hu was willing to accept, the reason he did not begin working at Alexion until several weeks after accepting the position, and the extent

---

[7] Pl.'s Reply in Further Supp. of His Mot. to Quash and/or for a Protective Order at 2, ECF No. 23 ["Pl.'s Reply"]; *see also* Pl.'s Br. at 11-13.

[8] Pl.'s Reply at 2; Pl.'s Br. at 14.

[9] Pl's Br. at 2, 7 (quoting *Warnke v. CVS Corp.*, 265 F.R.D. 64, 69 (E.D.N.Y. 2010)) ("[C]ourts . . . have recognized that because of the direct negative effect that disclosures of disputes with past employers can have on present employment, subpoenas in this context, if warranted at all, should be used only as a last resort.").

to which his departure from Merck was precipitated by his own voluntary actions.[10] Merck also argues that its requests for communications between Hu and Alexion may also be relevant to a potential after-acquired evidence defense to the extent they reveal Hu sent confidential or propriety information to potential employers leading up to his termination from Merck.[11] Merck contends that its request for communications pertaining to Hu's requests for leave or accommodations while employed at Alexion is relevant to whether Hu made or required such accommodations while in Merck's employ.[12] Merck also dismisses Hu's contention that many of the requests are duplicative. It claims it needs the information from a third party to test the veracity and completeness of Hu's claims.[13]

As the discovering party, Merck bears the initial burden of demonstrating that the Alexion subpoena lies within the scope of discovery as prescribed by Rule 26(b)(1). *See, e.g.*, *ITOCHU Int'l,* 303 F.R.D. at 232. Merck has not met its burden. Merck's subpoena is impermissibly broad under Rule 26(b)(1), as each request either seeks information which is already in Merck's possession or is not likely to result in the discovery of relevant material.

To the extent Merck's subpoena seeks information that is arguably relevant to the determination of Hu's lost wages claim and his efforts to mitigate damages, Hu has already provided Merck with this material during the course of discovery. Merck's attempt to obtain this information directly from Alexion is overly broad, unnecessarily duplicative, and does not justify either the burden of compliance to Alexion as a non-party or the

---

[10] Def.'s Opp'n. to Pl.'s Mot. for Protective Order and/or to Quash Subpoena at 5-7, ECF No. 22.
[11] *Id.* at 6.
[12] *Id.* at 8.
[13] *Id.* at 10-11.

invasion of Hu's privacy interests in his current employment relationship. *See, e.g.*, *Kimes v. Univ. of Scranton*, No. 3:14-CV-00091, 2015 U.S. Dist. LEXIS 21703, at *4 (M.D. Pa. Feb. 24, 2015) (noting the authority of the courts to "fashion a set of limitations that allow as much relevant material to be discovered as possible . . . while preventing unnecessary intrusions into legitimate interests that may be harmed by the discovery of material sought" in reviewing subpoenas directed to a plaintiff's current employer). Nonetheless, to corroborate Hu's representations regarding his compensation package, start date, and relocation specifics, Merck could issue a subpoena for that limited information.

As to Merck's remaining requests for information which it does not have—namely, broad requests for communications between Hu and Alexion which it claims *may* reveal (1) limitations or deficiencies in Hu's mitigation efforts (Requests Nos. 1, 3-6); (2) a basis to support an after-acquired evidence (Requests Nos. 1, 3); and (3) requests by Hu for medical accommodations or leave from Alexion (Request Nos. 8)—Merck has not articulated a sufficient basis to expect that such evidence exists. Absent such a basis, Merck's requests are impermissibly speculative and overly broad. *See, e.g., Barry v. Medtronic, Inc.*, No. 16-47, 2016 WL 1056783, at *1 (E.D. Pa. Mar. 17, 2016) (quoting *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1326 (Fed. Cir. 1990)) ("[D]iscovery may be denied where, in the court's judgment, the inquiry lies in a speculative area."); *Saller v. QVC, Inc.*, No. CV 15-2279, 2016 WL 8716270, at *4 (E.D. Pa. June 24, 2016) (finding that defendant failed to carry its initial burden in demonstrating that its requests to plaintiff's post-termination employer for her entire employment file and any requests for FMLA or ADA accommodations were within the permissible scope of discovery); *Boykins v. inVentiv Com. Servs., L.L.C.*, No. CIV.A. 11-7354 PGS, 2014 WL 413538, at *2 (D.N.J.

Feb. 4, 2014) (holding that defendant's request for plaintiff's entire file from her current employee was "overly broad and intrude[d] into Plaintiff's privacy interests" in employment discrimination action). Further, responding to the subpoena would burden Hu's employer.

To the extent Merck seeks to test the veracity of Hu's claims or the completeness of his discovery responses, Merck may do so through the less intrusive means of taking Hu's deposition under oath. *See Graham v. Casey's Gen. Stores*, 206 F.R.D. 251, 255 (S.D. Ind. 2002) (granting plaintiff's motion to quash defendant's subpoena for post-termination employment records where the "information is discoverable through a lesser intrusive means than serving a subpoena on [plaintiff's] current employer").

Because Merck has failed to satisfy its burden to show that its subpoena seeks information within the permissible scope of discovery pursuant to Rule 26(b)(1), Hu's motion to quash shall be granted and Merck shall be precluded from serving a subpoena on Alexion.